IN THE UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| DARYL LEWIS GILLEY COLINOT, | § | EASTERN DISTRICT OF VIRGINIA |
| Pro Se | § | NORFOLK DIVISION |
| v. | § | |
| EAST BEACH-BAY MARINE MARINA, INC., | § | |
| BLANDINE ESPEJO, | § | 2:14cv475 |
| VININGS MARINE, INC., | § | |
| THE CITY OF NORFOLK, VIRGINIA, | § | JURY TRIAL DEMANDED |
| COMMONWEALTH OF VIRGINIA/DEPT. OF | § | |
| GAME & INLAND FISHERIES, | § | |
| STEPHEN J. GREGORY, AN INDIVIDUAL, | § | |
| BRIAN PARKER, AN INDIVIDUAL, and | § | |
| UNITED STATES POSTAL SERVICE | § | |
| ESPEJO FRIEND or ASSOCIATE, JANE DOE, | § | |
| Defendants | § | |
| | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONOURABLE JUDGE OF SAID COURT:**

**COMES NOW DARYL LEWIS GILLEY COLINOT, PLAINTIFF PRO SE,** and files this, his **ORIGINAL COMPLAINT,** to inform the Court about the property losses, personal injury, pain and suffering, and civil rights deprivations that he has been

forced to endure, by and through the individual and concerted actions of **DEFENDANTS**.

He will show how **Defendants** did not show a single shred of humanity while being deliberately indifferent in carrying out the unconstitutional and unlawful acts against him, which gave rise to this action, and which they purposefully directed toward the common goal of stealing a 47-foot U.S. Documented Vessel, the Ship Ship Hooray, aboard which **Colinot** lived and worked.

## I. PARTIES

**Daryl Lewis Gilley Colinot** is a single male currently living at 210 North Main Street, Unit 1218 in Dayton, Ohio—45402;

**East Beach-Bay Marine Marina** is a corporation that runs a marina at 4621 Pretty Lake Avenue inside the city limits of the City of Norfolk, Virginia—23518;

**Blandine Espejo** is a single female who owns **East Beach-Bay Marine Marina** at 4621 Pretty Lake Avenue inside the city limits of the City of Norfolk, Virginia.

**Espejo Associate Jane Doe** is an unidentified Caucasian female, in her late 30's/early '40's, who between 10 AM and 2 PM on Wednesday, September 26th, 2012, was with **Defendant Espejo** at **Espejo's East Beach Marina** Office and at Slip 37, Dock B, where the Ship Ship Hooray was docked.

**The City of Norfolk, Virginia** is a municipality within the **Commonwealth of Virginia**, whose Custodian of Records is located at 800 E. City Hall Avenue, Suite 600, Norfolk, VA 23510, within the United States Eastern District.

**The Commonwealth of Virginia's Department of Wildlife and Inland Fisheries** is a public sector service entity operated by **Defendant Commonwealth of Virginia** that is involved by and through its agents in the titling and registration of boats within the **Commonwealth of Virginia**. The Department's main office is located at 4010 West Broad Street, in Richmond, Virginia--23230, within the United States Eastern District. The Attorney General and Custodian of Records Office for **Defendant Commonwealth of Virginia** is Mark R. Herring, whose office is located at 900 East Main Street in Richmond, Virginia—23219.

**Stephen J. Gregory** is a single male, who to the best of **Colinot's** knowledge, lives within the City of Norfolk, Virginia. At the time that the events of which **Colinot** complains took place, **Defendant Gregory** identified himself to **Colinot** as a Licensed Captain and Manager of **East Beach Marina**. Aside from the East Beach Marina address, **Colinot** was given a calling card by **Defendant Gregory** on Sunday, September 16th, 2012, which shows **Defendant Gregory's** email address to be wvsedge25@aol.com.

**Brian Parker** is a single male, whose residence location is unknown to **Colinot**, and who at the time that the events of which **Colinot** complains took place, identified himself to **Colinot** as Manager of **Vining Marines'** Vinings Landing Marina, and its on-site restaurant (Taylor's Landing/Captain's Galley).

**The United States Postal Service** is a public sector entity involved in the day-to-day operations of mail processing and delivery in the United States of America. Its headquarters and Custodian of Records are located at 475 L'Enfant SW, Washington, DC 20260-0004.

## II. VENUE

Venue in the Norfolk Division of the United States Eastern District is proper, because the events giving rise to this Complaint took place inside the Cities of Norfolk and Richmond, Virginia, both located in the Eastern District jurisdiction.

## III. JURISDICTION

The jurisdiction of this Court is invoked under 28 U.S.C. §1331. Federal question jurisdiction arises pursuant to: 42 U.S.C. §1983, the Age Discrimination Act, the Fourth, Fifth, Sixth, Seventh, Ninth, and Fourteenth Amendments of the United States Constitution, the Fourteenth Amendment's Equal Protection Clause; also the Privacy Act of 1974; Title 42, Chapter 21, 42 U.S.C. §3601 et seq. ; Title 42 U.S.C. §3631, 25 CFR §11.404, the Criminal Control Act of 1994: Title 42 U.S.C. 14141;  22 U.S.C. §4218 ; Title 18 U.S.C. Chapter 31, §661 and §662; Title 18,

U.S.C. §241, Title 18, U.S.C. §242, the Deceptive Trade Practices Act, Title 18, U.S.C. 1708 and 1709, Title 18, U.S.C. §1651, and the RICO Act of 1970, 18 U.S.C. §1961-1968, plus laws governing all aspects of U.S. Coast Guard Documented Vessels.

This case is also brought to this Court for enforcement and relief associated with the laws governing malicious prosecution in the Commonwealth of Virginia, as well as the protection provisions under Virginia State Code §18.2-174 and Virginia Section 29.1-733.1, laws governing all aspects of breach of contract and property damage in the Commonwealth of Virginia.

## IV. STATEMENT OF FACTS

1) Knowing that at her invitation of Friday, September 14th, 2012, **Plaintiff Lewis Gilley Colinot** (hereinafter **Colinot**) was planning to dock the 47-foot vessel, Ship Ship Hooray at **East Beach Marina Owner and Defendant Blandine Espejo** (hereinafter **Defendant Espejo**) failed to perform her duty as a marina operator, by not disclosing to **Colinot**, a member of the public, prior to **Colinot**'s arrival at **East Beach Marina** that said **Marina** did not allow the docking of wooden boats at its docks.

As a direct and proximate result of **Defendant Espejo's** failure to disclose the **Marina's** no-wooden boats policy to him prior to his arrival and subsequently not allowing him to dock there, **Defendant Espejo** acted with deliberate indifference with regard to **Colinot** having breached her contract with him, and depriving him of the enjoyment and privileges of the establishment and thus, the civil rights due him under the Fourteenth Amendment's Equal Protection Clause, and Title 42, §21 that governs public accommodations, all for which he requests relief.

2) Despite knowing that **Colinot** was inquiring about renting a slip at nearby marinas, and having knowledge that the Ship Ship Hooray was disabled due to an impeller problem, plus that there was an open-end agreement in place between **Defendant Espejo**, vessel owner **Gutierrez**, and **Colinot,** with no established dockage fees or expiration date attached, **Defendant Gregory** admitted to **Colinot** and **Gutierrez** that he had advised **Defendant**

> **Brian Parker** at Vining's Landing Marina nearby, not to rent a slip to them, thereby admitting to making it impossible for **Colinot** to move the boat. Further, **Defendant Gregory** told **Colinot** and Gutierrez verbatim:
> *"No, you will not be able to rent a slip there, because I talked to **Brian Parker** who manages all of the marinas around here, and I told him that you had a wooden boat. So he told me that he would not be renting to you. So don't even try talking to him, because he will not let you rent slip space in any (emphasis added) of the marinas that he manages around here."*
>
> **Defendant Brian Parker,** an employee of **Defendant Vinings Marine** cooperated with **Defendant Gregory**, because **Colinot** and **Gutierrez** were ignored by **Defendant Parker's** rental associates when **Colinot** and **Gutierrez**, who had been there the day before and had been given a Vinings Marine brochure and sales slip numbers to inspect, went to finalize their slip rental at Vinings Landing.

As a direct and proximate result of **Defendant Gregory's** intimidating and admitted actions of interfering with **Colinot's** and Gutierrez's attempt to find another marina nearby, and **Defendant Parker's** cooperation by not having his staff follow through by renting a slip for the Ship Ship Hooray. **Defendant Gregory** and **Defendant Parker** acted with deliberate indifference toward **Colinot** being deprived of his civil rights under 42 U.S.C. §1983, and protections under the Fair Housing and Age Discrimination Acts, along with the protection due him under 42 U.S.C. §3631 which prohibits Criminal Interference with Right to Fair Housing.

> 3) Close to 12 noon two days later, on Thursday, September 20th, 2012, while aboard the Ship Ship Hooray, **Colinot** was approached by **Defendant Gregory** and **City of Norfolk Police Officer Logan**, hereinafter **NPD's Logan**, who for no apparent reason, asked him for his driver's license, and ran a criminal check on him *before* stating that he was there to determine whether **Colinot's** presence, along with that of the Ship Ship Hooray was a civil matter or a criminal matter.

As a direct and proximate result of the actions by **Defendant Gregory** and **Defendant NPD's Logan**, said **Defendants** acted with deliberate indifference

regarding **Colinot** having been deprived of protection against unreasonable **searches and seizures under the Fourth Amendment, NPD's Logan** having victimized **Colinot** by allowing access to **Defendant Gregory** of **Colinot's** driver's license information through **NPD Logan's** unlawful act of color of the law, thereby depriving **Colinot** of his rights, privileges, and immunities secured and protected by the U.S. Constitution and the laws of the United States, under Title 42 U.S.C. §14141, the Privacy Act of 1974, and his civil rights under 42 U.S.C. §1983 for which he requests relief.

> As **Exhibit A** shows, hardly an hour had passed since **NPD's Logan** in his capacity as an **NPD Police Officer**, had requested driver's license information from **Colinot**, purportedly to run a criminal check on him, before **Defendant Espejo** was using that same driver's license information to prepare and sign a Criminal Trespassing Complaint against him at 12:56 PM. **Colinot** had never had occasion to give **Defendant Espejo** or **Defendant Gregory** his driver's license information, nor had ever consented to give **Defendant Espejo** or **Defendant Gregory** his driver's license information.

As a direct and proximate result of **NPD's Logan** having obtained **Colinot's** driver's license information under the color of the law, and without **Colinot's** knowledge or consent to having it passed it on to **Defendant Gregory** and **Defendant Espejo** who subsequently used it to file a criminal trespassing complaint against him, **Defendants** acted with deliberate indifference to **Colinot** being deprived of the rights, privileges, and immunities protection against unlawful stops, searches, or arrests given to him under the Fourth Amendment of the United States Constitution, and in violation of Title 42 U.S.C. §14141 which governs color of law, his civil right under 42 U.S.C. §1983, and the Privacy Act of 1974, all for which **Colinot** requests relief.

As shown on **Exhibit B**—Warrant of Arrest with Officer's Return, at 6:56 PM on Friday, September 21st, 2012, prior to the time that per agreement with **Defendant Gregory**, he was due to leave **East Beach Marina**, 70=year-old **Colinot** was falsely arrested, detained, and subsequently abused by **Defendant City of**

**Norfolk's Police Officer, G.C. Wall,** who can be identified via **NPD** Badge Number 16986.

While under **NPD Wall's** false detainment, **Colinot** was handcuffed, made to sit in the back of **NPD Wall's** police car, and was never read his Miranda Rights. He was not processed or booked; instead he was taken to a residential area behind a shopping center within Norfolk. There were numerous other police cars parked along both sides of the street there. While at said location, **NPD's Wall** took **Colinot's** fingerprints using an ink pad that he pulled out of his shirt pocket, and talked to 70-year-old **Colinot** in a condescending brow-beating way, by telling him that he did not have to drive him back to **East Beach** and that he might just have him walk back. **NPD's Wall** told **Colinot** that they were waiting for a document related to his alleged criminal trespassing offense to be delivered to them. A detailed affidavit from **Colinot** concerning this incident will be added to the court record at a later date.

As Exhibit B—Warrant of Arrest and Officer's Return further shows, **Colinot's** address had been changed from the 3515 Shipwright Street address in Portsmouth on his driver's license, that had been used for the Complaint, to the **East Beach Marina** address at 4521 Pretty Lake in Norfolk. Also, **NPD's Wall** clearly falsified the information on the Officer's return, by indicating and signing off as having summoned and not arrested **Colinot**, as had actually been the case.

As a direct and proximate result of **Defendant City of Norfolk's** failure and/or negligence to properly train and/or supervise **NPD Wall's** actions against him, **Defendant** acted with deliberate indifference to **Colinot** being deprived of his Constitutional rights as follows: His right to counsel as provided by the Sixth Amendment; his right to privileges and immunities as provided by the Fourteenth Amendment, and its Equal Protection Clause. Further, **NPD Wall's** actions to include the unlawful stop, false arrest, and

detainment of **Colinot,** as well as **NPD Wall's** falsification of the Warrant of Arrest return information were all in violation of Title 42, U.S.C.,§14141, all for which **Colinot** requests relief.

4) Early on Saturday, September 22nd, 2012, **Colinot** went to the Captain's Galley Restaurant on the Vining's Landing Marina Property to have a cup of coffee. When he came out of the restaurant, he saw members of **Defendant Parker's** staff taping "No Parking" and "You Will Be Towed" signs all over his car windows.

Around the same time that **Colinot** was in the restaurant, **Defendant Parker** approached Ship Ship Hooray owner **Nora Gutierrez,** to tell her that **Colinot** had his car parked at his restaurant's parking lot, and that he was thereby trespassing on his property. He told **Gutierrez** that he was going to have **Colinot's** car towed—when in actuality, **Colinot** was actually drinking a cup of coffee inside the restaurant, and was entitled to park his car in the restaurant parking lot.

As a direct and proximate result of **Defendant Vining's Marine** either having failed or neglected to properly train or supervise their Employee, **Defendant Parker, Defendants** acted with deliberate indifference to **Colinot** being deprived of the rights and privileges afforded him under the Equal Protection Clause of the Fourteenth Amendment, and his civil rights under 42 U.S.C. §1983.

5) On Wednesday, September 26th, 2012, Norfolk Attorney Anthony Montagna's secretary, Mary, made arrangements with **Defendant Blandine Espejo,** to allow **Colinot** and vessel owner, **Nora Soto Gutierrez,** to board the Ship Ship Hooray, to retrieve **Gutierrez's** cat. Aside from the cat and her crate, **Colinot** and **Gutierrez** were not allowed to take anything else off the boat, and were yelled at in a loud, non-stop, and hostile manner by **Defendant Espejo** and **Defendant Espejo Associate Jane Doe,** who incessantly screamed at **Colinot** and **Gutierrez** to, "Get the cat, her box, and

get off the boat! Hurry up, get out, get off the boat!" **Gutierrez** was not even allowed to take food for her cat. Both **Defendants Espejo** and **Defendant Espejo Friend or Associate, Jane Doe** ordered **Colinot** and **Gutierrez** off the boat.

As a direct and proximate result of their joint act of piracy (Title 18, U.S.C. §1651), **Defendant Espejo** and **Defendant Espejo Associate Jane Doe** acted with deliberate indifference to **Colinot's** respiratory medical needs, specifically a prescribed, Medicare-provided respiratory concentrator that **Colinot** needed to sleep with nightly as part of his COPD treatment.

**Defendants Espejo** and **Defendant Espejo Associate Jane Doe** also acted with deliberate indifference to **Colinot's** personal and intellectual property losses involving his manuscripts for his *Adventures of Admiral Dinghy* Log Book Series, as well as a collection of nautical menswear that he had designed, tailored, and planned to market in conjunction with his *Adventures of Admiral Dinghy* Book Series, all for which he requests relief.

6) At about 9:30 AM the next day, Thursday, September 27th, 2014, **Colinot** was on his way to Wonder Bread Bakery when he was stopped by some **City of Norfolk police officers** who told him that a Norfolk police officer, (W.G. Snyder) had been directed by **City of Norfolk Assistant City Attorney Cindy Hall** to give **Colinot** a verbal warning.

An eyewitness to the incident states that said "warning" evolved into a ten to 12-minute verbal and physical assault (by saliva and spit) onto **Colinot's** face caused by the extreme and forceful breath that **Defendant City of Norfolk's Police Officer, W.G. Snyder**, (hereinafter **NPD's Snyder**) was forcefully exhaling during the course of said assaults, culminating with **NPD's Snyder** threatening **Colinot** with the sinking of the Ship Ship Hooray which he stated he would carry out by "disconnecting the electricity that was necessary to run the Ship's bilge/sump pump."

**NPD's Snyder** also yelled out a false accusation regarding a debt that did not exist, but that **NPD's Snyder** believed **Colinot** owed a marina in Portsmouth. He made said accusation in an extremely loud manner, thereby putting his accusation within hearing range of Wonder Bread Store customers.

The other **NPD Officers** present **including NPD's Logan**, stood in horseshoe formation with their hands clasped in front of them, and did not make any attempt to stop **NPD Snyder's** assault on the 70-year-old **Colinot.** Upon leaving, they yelled intimidating remarks to **Colinot** by telling him that they were capable of spotting his car anywhere, that his car needed a paint job, and that his license tags were expired—yet not one of them wrote **Colinot** a ticket regarding the tags.

Before leaving, **NPD's Snyder** handed the eyewitness his calling card, while telling **Colinot** that he wanted him to call **Norfolk Assistant City Attorney Cindy Hall**, hereinafter the **City of Norfolk's Hall,** giving the eyewitness his calling card and Hall's phone number, which the eyewitness wrote on the back side of the card. Both card sides now appear as **Exhibits C** and **D** of this Document, along with **Exhibit E**—the receipt copy from Wonder Hostess that places the eyewitness at the Wonder Bread site at said date and time.

Not having called **City of Norfolk's Hall, Colinot** later received a phone call from her, who intimidated and threatened him by telling him to, "get out of town, and to not return, because she was ordering all of 'her police officers' to arrest him (**Colinot**) if they spotted him or his vehicle anywhere inside the City limits of Norfolk".

As a direct and proximate result of **Defendant City of Norfolk's** negligence and/or failure to properly train and supervise **NPD's Snyder** and the other **Police Officers** who were present, as well as **Assistant City Attorney Cindy Hall**, who all acted with deliberate indifference, while committing unlawful acts against **Colinot** while in their official capacities in violation of Title 42 U.S.C. §14141, thereby

depriving him of his civil rights under 42 U.S.C. §1983, his privileges, and immunities protection against unlawful stops, searches, or arrests under the Fourth Amendment, protections due him under the Equal Protection Clause of the Fourteenth Amendment, and the Privacy Act of 1974, all for which **Colinot** requests relief.

7) On Wednesday, October 10th, 2012, **Colinot** received an unsolicited harassing phone call from **NPD's Snyder**, which originated from **Defendant Gregory's** telephone number (757)675-3214 through which **NPD's Snyder** gave **Colinot** unsolicited wrong legal advice, by urging him to move the Ship Ship Hooray *prior to* the October 16th court date in which the Criminal Trespassing Case against **Colinot** was scheduled to be heard.

   **Defendant City of Norfolk** was deliberately indifferent to **NPD's Snyder's** harassment to which he continued to subject **Colinot,** thereby depriving him of Constitutional rights, privileges, or immunities secured or protected by the U.S. Constitution, as well as Title 42 U.S.C. §14141 that governs misconduct by governmental authorities, for which **Colinot** requests relief.

8) **Defendant Espejo's** criminal trespassing complaint that she had filed with the assistance of **NPD's Logan** and **Defendant Gregory** via **NPD Logan's** driver's license information gathering through color of law tactics against **Colinot** was dismissed by the Norfolk court on December 28th, 2012. **Colinot** will supplement the court record with a certified copy of the case dismissal at a later date.

   As a direct and proximate result of the malicious prosecution that resulted from the color of law action that **Defendant City of Norfolk's Officer Logan** used to obtain his driver's license information to unlawfully share with **Defendants Gregory** and **Espejo,** who filed a false and baseless criminal trespassing case against him that was dismissed by the Court on December 28, 2012; but that prior to its dismissal subjected **Colinot** to false arrest and unlawful arrest and detainment by another **NPD Officer G.C. Wall, Colinot**

    requests that the Court grant him malicious prosecution damages and relief.

9) Following the dismissal of the criminal trespassing case, **Colinot** and **Gutierrez** continued to look for an attorney to assist them with the necessary civil action to retrieve the Ship Ship Hooray.

    In order to preserve the record, and their respective personal and intellectual property, **Colinot** and **Gutierrez** sent a series of certified letters to advise **East Beach Marina** that the Ship Ship Hooray had not been abandoned. The certified letters were signed for by **Defendant Espejo**, but neither **Colinot** nor **Gutierrez** ever received a reply or acknowledgment from **Defendant Espejo**, other than the postal delivery service acknowledgments, (green cards from the post office).

Sometime during the first two weeks in July, 2013, **Colinot** went to the U.S. Post Office in Salisbury, Maryland to pick up the mail, but **Defendant Postal Clerk John Doe** refused to give **Colinot** the mail for him and **Gutierrez**.

On or about August 1st, 2013, **Colinot** and **Gutierrez** went to the same Salisbury post office and were promptly given their mail by a female clerk. In the mail that the clerk handed them, were two Certified Mail notices that showed the sender to be **Defendant East Beach Marina** and a shortened window of delivery of 16 days instead of the customary 30 days for mail pick-up availability.

**Gutierrez** and **Colinot** promptly sent **Defendant East Beach Marina** two certified letter requests (one on August 2nd, which they would have received at the beginning of the first week in August, and a second request to re-send on August 23rd, 2013. for re-sending of the certified mail dated June 22nd, 2013; but neither **Colinot** nor **Gutierrez** received a response from **Defendant Espejo** -or anyone else with **East Beach Marina**.

On or about August 29th, 2013, **Gutierrez** and **Colinot** were informed by an Officer with **Defendant Commonwealth of Virginia's Department of Wildlife and Inland Fisheries**, that the Ship Ship Hooray—a U.S. Documented Vessel, had been

titled to **East Beach Marina** during the first week of August, 2013, which coincided with **East Beach Marina's** receipt of **Colinot** and **Gutierrez's** first certified letter request for a re-send, and that also included another Notice of Non-Abandonment of the Vessel. The Officer (Travis Murray) also mentioned that although titled to **East Beach Marina**, as of Friday, August 30th, 2013, the vessel had not changed hands.

As a direct and proximate result of **Defendant U.S. Postal Service's** deliberate indifference, coupled with its failure and/or negligence to properly vet, train, and supervise its employees in the delivery of certified mail, along with the failure and/or negligence of the **Commonwealth of Virginia's Department of Wildlife and Inland Fisheries** to properly vet, train, and supervise their Employees regarding the proper procedures for issuing of boat titles and registrations, **Colinot** suffered loss of personal and intellectual property without due process, and was deprived of protection via the Fourth Amendment against illegal searches and seizures. For the reasons stated, **Colinot** requests that the Court grant him relief and damages for his loss of property.

> 10) During the first week in September, 2013, **Colinot** and **Gutierrez** made various attempts to report the theft of the Ship Ship Hooray by telephone, but **the City of Norfolk** would not accept or take a theft report from them. They were told that any officer inside the city limits of Norfolk would take their theft report. **Colinot** and **Gutierrez** drove 75 miles from the Eastern Shore in Maryland to the City of Norfolk to file the report. A couple of officers on the street were not willing to "touch that with a ten-foot pole". They suggested that **Colinot** and **Gutierrez** go to the Norfolk Police Station to file the theft report, but were turned down by the Chief of Investigations, (last name Crowder), who after talking with his counterpart at **Defendant Virginia Wildlife and Fisheries Department**, told **Colinot** and **Gutierrez** that "...they could not deem the boat stolen or missing because they (**Colinot** and **Gutierrez**) knew that it had been titled to **East Beach Marina**".

> As a direct and proximate result of **Defendant City of Norfolk's** repeated refusal to take a theft of vessel or missing vessel report from **Colinot** and **Gutierrez**; and **Defendant's** deliberate indifference coupled with failure and/or negligence to properly train and supervise its employees in the proper procedures for taking reports for missing items like a four-story, 47-foot, 3-stateroom (bedroom) and 3-bathroom (head) yacht and all of the vessel's contents, **Colinot** requests relief and damages for the personal and intellectual property that he lost without due process.

11) During the first two weeks in September, 2013, for her own interest and **Colinot's** Ship Ship Hooray owner **Gutierrez** repeatedly called the head of **Defendant Virginia Wildlife and Inland Fisheries Department** Boat Titling and Registration Division, leaving detailed voicemails for her regarding the Ship Ship Hooray's title issue. Acting with deliberate indifference, Ms. Adams, head of the Boat Titling and Registration did not return any of **Gutierrez's** calls for approximately two weeks, even though the receptionist had mentioned that Dorita Adams was in the office; or at her desk at times prior to her finally returning **Gutierrez's** phone call. **Gutierrez** had even tried calling other Boat Titling and Registration Employees, John Evans and Cindy Morgan—but neither one of them returned her call either.

As a direct and proximate result of **Defendant Virginia Department of Wildlife and Inland Fisheries'** failure and/or negligence to properly vet, train, and supervise its Boat Titling and Registration in proper boat titling and registration procedures, **Colinot** was deprived of his personal and intellectual property without due process, and requests relief from the Court.

12) On or about May 20th, 2014, **Defendant Espejo** informed Attorney Orion Steele, that the Ship Ship Hooray had been destroyed.
As a direct and proximate result of **Defendant Espejo's/East Beach-Bay Marine's** action, **Colinot** requests that the Court grant him relief for the personal property and intellectual property that he had aboard the Ship.

13) Collectively, the wrongful acts involving the various private and public sector entities detailed in this Document, show the existence of vertical RICO-style enterprises with horizontal relationships to similar vessel thefts that have taken place in the states of Florida, Georgia, and Virginia. For the reason so stated, **Colinot** cites that the named **Defendants** in his Complaint have maintained deliberate indifference in the wrongful acts that they have committed against him and his property, along with with purposeful intent to facilitate the pirating of boats, and make it appear to be legal.

As a direct and proximate result of the Constitutional violations constituting a RICO-style enterprise that he has described herein, **Colinot** asks the Court for relief.

### V. PRAYER FOR DAMAGES

WHEREFORE **Plaintiff Daryl Lewis Gilley Colinot** the sum of $196,100.00 for actual losses; general damages according to proof (proved in trial); reasonable attorney's fees; costs of suit; and such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

DARYL LEWIS GILLEY COLINOT
Plaintiff Pro Se
210 North Main Street, #1218
Dayton, OH 45402
(937)503-1385 and (937)825-0008